1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

DO NO HARM,

*Plaintiff*,

v.

UNIVERSITY OF WASHINGTON SCHOOL OF MEDICINE; UW MEDICINE; GABRIEL SARAH, in his official capacity as the Associate Dean for Student Affairs of the UW School of Medicine; BESSIE YOUNG, in her official capacity as the Vice Dean for Equity, Diversity, and Inclusion of the UW School of Medicine and the Medical Director for the UW Medicine Office of Healthcare Equity; PAULA HOUSTON, in her official capacity as the UW Medicine Chief Equity Officer; TIMOTHY DELLIT, in his official capacity as the Dean of the UW School of Medicine and CEO of UW Medicine; ANA MARI CAUCE, in her official capacity as the President of the University of Washington; LEONARD FORSMAN, LEONOR R. FULLER, ALEXES HARRIS, LINDEN RHOADS, CONSTANCE W. RICE, ROGELIO RIOJAS, KEONDRA RUSTAN, DAVID SCHUMACHER, BLAINE TAMAKI, MAGGIE WALKER, and DAVID ZEECK, in

Case No.: 2:24-cv-1678

# COMPLAINT

Complaint, No. 2:24-cv-1678.    1

1  |  their official capacity as members of the
2  |  Board of Regents of the University of
   |  Washington,
3  |
   |                            *Defendants.*
4  |

5        Do No Harm brings this action against the University of Washington School of

6  Medicine, UW Medicine, and various University of Washington School of Medicine

7  and UW Medicine officials for violating the Fourteenth Amendment to the U.S. Con-

8  stitution, Title VI of the Civil Rights Act of 1964, and Section 1557 of the Affordable

9

10 Care Act. Do No Harm seeks declaratory and injunctive relief.

11      1.      "Racial discrimination is invidious in all contexts." *SFFA v. Harvard*, 600

12 U.S. 181, 214 (2023) (cleaned up). Yet Defendants operate a networking directory that

13

14 permits medical students who are "Black, Indigenous, [or] People of Color" to access

15 a "secured database" of "BIPOC physicians" from across the country while excluding

16

17 white students and white physicians. *BIPOC Physicians Directory for UWSOM BIPOC*

18 *Students*, UW Med. Off. of Healthcare Equity (last visited Oct. 14, 2024) (Ex.A at 1),

19 perma.cc/TT8L-TC63.

20

21      2.      In Defendants' own words, "Deciding on a career or residency program

22 is one of the most important decisions medical students make during their time in

23

24 medical school." *Id.* at 2. To make an informed choice, Defendants acknowledge that

25 medical students must take it upon themselves to learn about the various careers, spe-

26 cialties, and residency programs that are available. As the American Medical

27

28

Association put it in 2023, "having [a mentor] can make all the difference especially when making tough decisions such as choosing a medical specialty." Berg, *What I Wish I Knew in Medical School About Finding Mentors*, Am. Med. Ass'n (Feb. 13, 2023), perma.cc/Z9BR-5MLF.

3.   Defendants should assist students in their efforts to network with experienced physicians and learn more about the profession that Defendants are preparing them to join. But rather than offer networking resources to all students equally, Defendants have chosen racial stratification, creating and maintaining a special physician-networking directory available only to BIPOC students.

4.   Defendants' Directory is doubly discriminatory—in addition to excluding white students who wish to take advantage of a valuable networking tool, the Directory excludes white physicians, even those who would be great resources for medical students of all races. Doctors have a professional obligation to give back to the community. And as Defendants observe, when doctors connect with medical students, they obtain the "[b]enefits" of "expand[ing] their network" and "support[ing] … future colleagues." Ex.A at 2. But rather than allow any doctor to add his or her name to the Directory based on neutral criteria, Defendants exclude white physicians because of their race.

5.   Defendants' race-based exclusion of white students and physicians from the Directory flouts the Equal Protection Clause of the Fourteenth Amendment. And

Ard Law Group PLLC
PO Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

because Defendants University of Washington School of Medicine and UW Medicine are recipients of federal financial assistance, their actions also violate Title VI of the Civil Rights Act of 1964 and Section 1557 of the Affordable Care Act.

6.     "Eliminating racial discrimination means eliminating all of it." *Harvard*, 600 U.S. at 206. Do No Harm is entitled to relief.

# PARTIES

7.     Plaintiff, Do No Harm, is a nationwide membership organization consisting of healthcare professionals, students, patients, and policymakers who want to protect healthcare from radical, divisive, and discriminatory ideologies.

8.     Do No Harm accomplishes its mission through education and advocacy. It has, among other things, sued the federal government for introducing discriminatory "equity" criteria into Medicare, sued private medical organizations for creating racially exclusive fellowships, and filed Office of Civil Rights complaints against medical schools that create fellowships and scholarships that exclude students based on race.

9.     Do No Harm has at least one member who is a physician and is ready and able to add his name to the Directory once a court orders Defendants to stop discriminating.

10.     Defendant, University of Washington School of Medicine, is a public medical school in the State of Washington. *See* Wash. Rev. Code §28B.20.300. It operates the BIPOC Physicians Directory, which excludes white students and doctors, and

is expressly designated as being "for [University of Washington School of Medicine] BIPOC students." Ex.A at 1.

11.     The University of Washington receives federal financial assistance. A school "receives federal financial assistance when it enrolls students who receive federal funds earmarked for educational expenses." *NCAA v. Smith*, 525 U.S. 459, 466 (1999) (citing *Grove City Coll. v. Bell*, 465 U.S. 555, 563-70 (1984)). Many UW students use federal student aid to finance their education. *E.g.*, *Loan Resources and Debt Management*, Univ. of Wash. Sch. of Med. Off. of Student Affs. (last visited Oct. 14, 2024), perma.cc/BU2K-ZBP7. And the University of Washington system, including the medical school, receives federal research grants. *See, e.g.*, *Funding Opportunities*, Univ. of Wash. Off. of Rsch. (last visited Oct. 14, 2024), perma.cc/Z7S2-W6VG.

12.     Defendant, UW Medicine, is an integrated clinical, research, and learning health system based in Washington State. UW Medicine is made up of various public and private entities, including the University of Washington School of Medicine. *See UW Medicine Overview* 1-5, UW Med. (last visited Oct. 14, 2024), perma.cc/C8EQ-CQZZ. The Dean of the medical school, who holds a concurrent position as UW Medicine's CEO, is overseen by the Board of Regents of the University of Washington. *See id.* at 6; *Executive Order No. 6*, Univ. of Wash. Pol'y Directory ¶3 (last visited Oct. 14, 2024), perma.cc/932Q-HF6H. UW Medicine's senior leadership reports to its CEO, and UW Medicine's board "is accountable to the President and Board of

Regents through the CEO." *Executive Order No. 6* ¶3. UW Medicine operates the BI-POC Physicians Directory together with the University of Washington School of Medicine for the benefit of the medical school and its students.

13.     UW Medicine both receives federal financial assistance and is composed of two or more entities that receive federal financial assistance. UW Medicine directly and indirectly accepts Medicare and Medicaid reimbursements. *Insurance & Coverage*, UW Med. (last visited Oct. 14, 2024), perma.cc/WZ35-323A. And UW Medicine's "integrated health system" comprises various public and private entities that accept federal financial assistance or hold themselves out as being principally engaged in the healthcare business. *E.g.*, *UW Medicine Overview* at 1, 5. These entities include the University of Washington School of Medicine, UW Medical Center, Airlift Northwest, Harborview Medical Center, and Fred Hutchinson Cancer Center. *Id.*

14.     Defendant, Gabriel Sarah, is the University of Washington School of Medicine's Associate Dean for Student Affairs. The Office of Student Affairs oversees career advising for medical students. *See Student Affairs*, Univ. of Wash. Sch. of Med. Off. of Student Affs. (last visited Oct. 14, 2024), perma.cc/45XM-QT23. The Office of Career Advising, in turn, manages the BIPOC Physicians Directory. Ex.A at 3. Sarah is thus responsible for maintaining and operating the Directory. Sarah is sued in his official capacity.

15.     Defendant, Bessie Young, is the University of Washington School of Medicine's Vice Dean for Equity, Diversity and Inclusion and the Medical Director for UW Medicine's Office of Healthcare Equity. In these roles, Young is responsible for implementing DEI policies at the medical school and working with UW Medicine's Chief Equity Officer to run the Office of Healthcare Equity. *See Bessie Young Joins Office of Healthcare Equity*, UW Med. Dep't of Med. News (Feb. 3, 2021), perma.cc/8ZGG-ULNQ. The Office of Healthcare Equity operates the BIPOC Physicians Directory with and for the medical school and its students. Young is sued in her official capacity as Vice Dean and Medical Director.

16.     Defendant, Paula Houston, is UW Medicine's Chief Equity Officer. *Office of Healthcare Equity Team*, UW Med. (last visited Oct. 14, 2024), perma.cc/87TL-CB2V. Houston is responsible for overseeing the Office of Healthcare Equity and implementing UW Medicine's overarching DEI bureaucracy. *See Healthcare Equity Blueprint 2.0: The Path to Health Justice*, UW Med. Off. of Healthcare Equity (Mar. 2022), perma.cc/HD48-NHVD. As Chief Equity Officer, Houston is responsible for creating, implementing, and maintaining UW Medicine's DEI policies and practices, including programs like the BIPOC Physicians Directory. The Office of Healthcare Equity operates the Directory with and for the medical school and its students. Houston is sued in her official capacity as Chief Equity Officer.

17.     Defendant, Timothy Dellit, is Dean of is the University of Washington School of Medicine, UW Medicine's CEO, and the University of Washington's Executive Vice President for Medical Affairs. *Dr. Tim Dellit Named CEO of UW Medicine, Dean of the University of Washington School of Medicine*, Univ. of Wash. News (Nov. 28, 2023), perma.cc/QK4T-RD2X. Dellit's position as Dean and CEO means that he is "responsible for the UW Medicine health system and for resource management of the University of Washington's School of Medicine and the University's owned and managed medical centers and their associated clinics and affiliated programs." *Executive Order No. 6* ¶1. He is also responsible "for the development and maintenance of academic programs in medical education, research, and training." *Id.* As Dean, all University of Washington School of Medicine faculty and staff ultimately report to Dellit. As CEO, the same is true for UW Medicine's senior leadership team and board. Dellit's responsibilities include creating, implementing, operating, maintaining, and enforcing University of Washington School of Medicine and UW Medicine policies and practices, including DEI policies and practices like the BIPOC Physicians Directory. Dellit is sued in his official capacity as Dean and CEO.

18.     Defendant, Ana Mari Cauce, is the President of the University of Washington. *Office of the President*, Univ. of Wash. (last visited Oct. 14, 2024), perma.cc/D4ZU-CHDN. As President, Cauce is responsible for creating, implementing, and maintaining University of Washington policies and practices, including the

Ard Law Group PLLC
PO Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

BIPOC Physicians Directory. Cauce is sued in her official capacity as University President.

19.    Defendants—Leonard Forsman, Leonor R. Fuller, Alexes Harris, Linden Rhoads, Constance W. Rice, Rogelio Riojas, Keondra Rustan, David Schumacher, Blaine Tamaki, Maggie Walker, and David Zeeck—are members of the Board of Regents of the University of Washington. *Current Board Members*, Univ. of Wash. (last visited Oct. 14, 2024), perma.cc/6CTF-FUZK. These Defendants are responsible for creating, implementing, and maintaining University of Washington and UW Medicine policies and practices, including the BIPOC Physicians Directory. These Defendants are sued in their official capacity as Board members.

## JURISDICTION AND VENUE

20.    This Court has subject-matter jurisdiction under 28 U.S.C. §1331.

21.    Venue is proper in the Western District of Washington under 28 U.S.C. §1391 because Defendants reside here and a substantial part of the events and omissions giving rise to the claim occurred here.

## FACTUAL ALLEGATIONS

I.    **Defendants operate a BIPOC Physicians Directory that excludes white students and physicians.**

22.    Defendants operate the BIPOC Physicians Directory, a secured database of physicians from across the country who have agreed to serve as points of contact

for BIPOC students at the University of Washington School of Medicine who may have questions about specialties, residency programs, and regions. Ex.A at 1.

23.    The Directory's goal is "to have a safe avenue for students to connect with BIPOC physicians with identities similar to their own" and to enable "BIPOC students [to] easily talk to physicians with identities similar to their own to find advice and answers to their questions." *Id.*

24.    Physicians participate in the program by "adding [their] name[s] to the Directory." *Id.* at 2-3. By doing so, physicians agree to "[s]erve as a resource to [University of Washington School of Medicine] BIPOC students, responding to occasional inquiries," and to "[a]ddress questions regarding [their] specialty choice, [and their] residency program or institution." *Id.* After requesting access through the Office of Career Advising, BIPOC medical students can view a spreadsheet through the school's intranet that allows them to filter the Directory and find participating physicians with similar interests and identities. *Id.*; *Diverse Identities & Affinity Groups—Resources for BIPOC Students*, Univ of Wash. Sch. of Med. Off. of Career Advising (last visited Oct. 14, 2024), perma.cc/6MAR-NZMN.

25.    Defendants explain that participating physicians obtain the "[b]enefits" of "[s]upport[ing] an important cause," "[e]xpanding [their] network," "[s]upporting [their] future colleagues," and "invest[ing] in [their] communities," Ex.A at 2.

26.    The Directory also benefits participating BIPOC medical students. "Deciding on a career or residency program is one of the most important decisions medical students make during their time in medical school." *Id.* Students' decisions about specialties and residency programs may be informed by conducting independent research, including by networking with physicians working in specialties in which the students are interested. The Directory is intended to "serv[e] as a point of reference for student questions." *Id.*

27.    Defendants are actively "recruiting BIPOC physicians to be a resource in the BIPOC Physicians Directory." *E.g.*, *BIPOC Physicians Directory Launch*, UW Med. Dep't of Pediatrics (last visited Oct. 14, 2024), perma.cc/Y8ZZ-GMQV. BIPOC medical students receive "direct access to the Directory," a readymade, nationwide physician network from which they can solicit useful and potentially career-shaping information about the medical profession. *See Diverse Identities & Affinity Groups—Resources for BIPOC Students.*

28.    BIPOC is short for "black, indigenous, and people of color," and is defined by Defendants to include an itemized list of racial groups: "Black/African Diaspora," "Native American/Indigenous," "Native Hawaiian/Pacific Islander," "Asian," "Latine/Latinx," "Middle Eastern," and "North African." Ex.A at 3.

29.    White medical students are ineligible to participate in the BIPOC Physicians Directory. Thus, Defendants deprive white students of access to a nationwide

ARD LAW GROUP PLLC
PO Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

network of physicians who can serve as points of contact, answer students' questions about career choices and specialties, and otherwise inform students' decisions about their future in medicine.

30.     White physicians are ineligible to participate in the BIPOC Physicians Directory, even if they would prove to be a great resource for medical students, BIPOC or not. Thus, Defendants deprive white physicians of the "[b]enefits" of "[s]upport[ing] an important cause," "[e]xpanding [their] network," "[s]upporting [their] future colleagues," and "invest[ing] in [their] communities." *Id.* at 2.

31.     The Directory is managed by the University of Washington School of Medicine's Career Advising Office. *Id.* at 3. The Career Advising Office manages the student registration process through the medical school's intranet. *See Diverse Identities & Affinity Groups—Resources for BIPOC Students.*

ARD LAW GROUP PLLC
PO Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

32.     UW Medicine's Office of Healthcare Equity operates the BIPOC Physicians Directory together with the University of Washington School of Medicine. The main information page for the Directory is located on UW Medicine's website (equity.uwmedicine.org). And the Directory's "Sign up" link on the Office of Career Advising's webpage redirects physicians to the Office of Healthcare Equity. *Diverse Identities & Affinity Groups—Resources for BIPOC Students*; Ex.A.



## II.    UW discriminates against Do No Harm's members.

33.     Do No Harm has at least one member—Member A—who is harmed by Defendants' exclusion of white students and physicians from the BIPOC Physicians Directory.

34.     Member A is an experienced physician in the State of Washington.

35.     Member A considers it a professional obligation to give back to the medical community by serving as a mentor and a resource for current medical students and

residents who want to learn more about the medical profession, various career paths, and specialties.

36.     Having completed residency at the University of Washington, Member A would be an especially great mentor and resource for medical students of any race.

37.     Throughout his career, Member A has mentored many medical students, residents, and younger doctors. These conversations and relationships not only benefited the mentees, but also benefited Member A by giving him opportunities to give back to the profession, think critically about his practice, and create future colleagues and professional connections. Neither his race—nor the race of anyone he shared his knowledge and experience with—ever mattered, or was even mentioned, in these conversations.

38.     Member A is ready and able to add his name to the Directory to serve as a resource for students regardless of their race. If a court orders Defendants to stop racially discriminating against physicians and students, Member A will do so.

39.     But because Member A is white, he is ineligible to add his name to the Directory, participate in the Directory program, or serve as a resource to medical students through the Directory.

40.     Member A finds it hurtful, unfair, and offensive that his race—which he cannot control—is being used by Defendants to preclude him from serving as a resource for students who browse the Directory.

ARD LAW GROUP PLLC
PO Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

41.     Defendants' use of race to exclude certain students from the Directory also artificially limits the number of students and future colleagues that Member A could mentor through the Directory. Thus, even if Member A could add his name to the Directory, Defendants' discriminatory practices would prevent him from "[s]up-port[ing] an important cause," "[e]xpanding [his] network," "[s]upporting [his] future colleagues," and "invest[ing] in [his] communit[y]" to the fullest extent. Ex.A at 2.

## CLAIMS FOR RELIEF
### COUNT I
### Violation of the Fourteenth Amendment
### (Against Defendants Sarah, Young, Houston, Dellit, Cauce, Forsman, Fuller, Harris, Rhoads, Rice, Riojas, Rustan, Schumacher, Tamaki, Walker, and Zeeck)
### (U.S. Const. amend. XIV; 42 U.S.C. §1983)

42.     Do No Harm repeats and realleges the preceding allegations.

43.     Section 1983 provides that "[e]very person who, under color of any stat-ute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. §1983.

44.     Defendants Sarah, Young, Houston, Dellit, Cauce, Forsman, Fuller, Harris, Rhoads, Rice, Riojas, Rustan, Schumacher, Tamaki, Walker, and Zeeck are "person[s]" acting under the color of state law. *Id.*

45.     The Fourteenth Amendment provides, among other things, that no person shall be denied "the equal protection of the laws." U.S. Const. amend. XIV, §1.

46.     The "central mandate" of equal protection is "racial neutrality" by the government. *Miller v. Johnson*, 515 U.S. 900, 904 (1995). And the "'core purpose' of the Equal Protection Clause" is to "'d[o] away with *all* governmentally imposed discrimination based on race.'" *Harvard*, 600 U.S. at 206 (emphasis added). "[W]henever the government treats any person unequally because of his or her race, that person has suffered an injury that falls squarely within the language and spirit of the Constitution's guarantee of equal protection." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 229-30 (2000); *see also Muldrow v. St. Louis*, 601 U.S. 346, (2024) (Kavanaugh, J., concurring in the judgment) (explaining that unlawful discrimination is itself a harm).

47.     Defendants maintain a BIPOC Physicians Directory that serves as a resource for BIPOC medical students while excluding white students and physicians.

48.     Defendants' BIPOC Physicians Directory creates an explicit racial classification and determines eligibility for participation based on race.

ARD LAW GROUP PLLC
PO Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

49.     When the government "distributes … benefits on the basis of individual racial classifications, that action is reviewed under strict scrutiny." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007).

50.     "[A]ll racial classifications … must be analyzed by a reviewing court under strict scrutiny." *Adarand*, 515 U.S. at 227. The Supreme Court has "insisted on strict scrutiny in every context, even for so-called 'benign' racial classifications." *Johnson v. California*, 543 U.S. 499, 505 (2005). Strict scrutiny is required because "[r]acial classifications raise special fears that they are motivated by an invidious purpose." *Id.* "'Absent searching judicial inquiry into the justification for such race-based measures, there is simply no way of determining … what classifications are in fact motivated by illegitimate notions of racial inferiority or simple racial politics.'" *Id.* (cleaned up).

51.     Strict scrutiny is a "searching examination, and it is the government that bears the burden to prove 'that the reasons for any racial classification are clearly identified and unquestionably legitimate.'" *Fisher v. Univ. of Tex.*, 570 U.S. 297, 310 (2013) (cleaned up). The racial classification "must survive a daunting two-step examination." *Harvard*, 600 U.S. at 206. First, the racial classification must "'further compelling governmental interests.'" *Id.* at 207. Second, the government's use of race must be "'narrowly tailored'—meaning 'necessary'—to achieve that interest." *Id.*

52.     Defendants cannot satisfy strict scrutiny.

ARD LAW GROUP PLLC
PO Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

53.     Defendants cannot show a compelling governmental interest for excluding white students or physicians from the Directory. The Supreme Court has recognized compelling interests in the use of race in only the narrowest of circumstances, where those preferences are explicitly designed to remedy recent acts of discrimination and to make the *individual subjects* of that discrimination whole. *Id.* There is no evidence that Defendants created the Directory to remedy some past discrimination that they took part in. Instead, Defendants want to give BIPOC medical students an additional resource simply because they belong to certain racial groups. Such an outright race-based distribution of governmental benefits and resources—especially in the educational context—is patently illegitimate and illegal. *See Brown v. Bd. of Educ.*, 347 U.S. 483, 493-94 (1954); *Harvard*, 600 U.S. at 216-18.

54.     The BIPOC Physicians Directory is also not narrowly tailored.

55.     Defendants cannot show that excluding white students and physicians is necessary to achieve any of its interests.

56.     White students' and physicians' race operates as a "negative" by categorically excluding them from the Directory.

57.     Defendants use race as a stereotype—for example, by proceeding from the assumption that BIPOC students will not benefit from networking with white physicians and will only benefit from talking to a physician of the same race.

58.     Defendants' use of race has no end date.

ARD LAW GROUP PLLC
PO Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT II
### Violation of Title VI of the Civil Rights Act of 1964
### (Against Defendants University of Washington School of Medicine and UW Medicine)
### (42 U.S.C. §2000d et seq.)

59.    Do No Harm repeats and realleges the preceding allegations.

60.    Title VI of the Civil Rights Act of 1964 provides that no person "shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d.

61.    The BIPOC Physicians Directory is a "program or activity" under Title VI because it is an "operatio[n]" of the University of Washington School of Medicine. Title VI defines "program or activity" to mean "all of the operations of" a "university" "any part of which is extended Federal financial assistance." §2000d-4a(2)(A). The University of Washington School of Medicine is a public university that receives federal financial assistance.

62.    The Directory is also a covered "program or activity" because it is an "operatio[n]" of UW Medicine. Title VI applies to UW Medicine's operations because UW Medicine is both an "instrumentality of a State" that receives federal financial assistance, §2000d-4a(1)(A), and a combination of covered entities, §2000d-4a(4). UW Medicine was established by the University of Washington, which is subject to Title VI under §2000d-4a(2)(A), and is made up of various public and private medical

entities "principally engaged in the business of providing … health care," §2000d-4a(3)(A)(ii).

63.     Private individuals can sue to enforce Title VI and obtain both injunctive relief and damages. *See Alexander v. Sandoval*, 532 U.S. 275, 279-80 (2001).

64.     Under §2000d-7(a)(1), a state is "not … immune … from suit in Federal court for a violation of … title VI."

65.     Defendants have caused and will continue to cause white students and physicians to be "excluded from participation in," "denied the benefits of," and "subjected to discrimination under" the BIPOC Physicians Directory program "on the ground of race, color, or national origin." §2000d.

66.     At a minimum, because the Directory violates the Equal Protection Clause of the Fourteenth Amendment, it also violates Title VI. *See SFFA v. Harvard*, 980 F.3d 157, 185 (1st Cir. 2020) ("Title VI's protections are coextensive with the Equal Protection Clause."), *rev'd on other ground* 600 U.S. 181; *cf. Harvard*, 600 U.S. at 308-09 (Gorsuch, J., concurring) (observing that Title VI has "'independent force'" and makes it "*always* unlawful to discriminate among persons even in part because of race" without subjecting racial classifications to strict scrutiny).

1

2

3

## COUNT III
## Violation of Section 1557 of the Affordable Care Act
## (Against Defendants University of Washington School of Medicine and UW
## Medicine)
## (42 U.S.C. §18116)

4

5

6

67.     Do No Harm repeats and realleges the preceding allegations.

7

68.     Under Section 1557, "an individual shall not … be excluded from partic-

8

ipation in, be denied the benefits of, or be subjected to discrimination under, any health

9

10

program or activity, any part of which is receiving Federal financial assistance, includ-

11

ing credits, subsidies, or contracts of insurance" because of race. 42 U.S.C. §18116(a).

12

13

69.     The BIPOC Physicians Directory is a "health program or activity" be-

14

cause it is an operation of both UW Medicine and the University of Washington School

15

of Medicine.

16

70.     Section 1557 covers UW Medicine's operations because UW Medicine is

17

18

an "integrated health system" principally engaged in the business of providing

19

healthcare. *See UW Medicine Overview* at 2. At a minimum, "[t]he phrase 'health program

20

or activity' in section 1557 plainly includes all the operations of a business principally

21

22

engaged in providing healthcare." *T.S. ex rel. T.M.S. v. Heart of CarDon LLC*, 43 F.4th

23

737, 743 (7th Cir. 2022). UW Medicine receives federal financial assistance through

24

Medicare and Medicaid reimbursements.

25

71.     Section 1557 separately covers the University of Washington School of

26

27

Medicine's operations because the medical school trains doctors and other healthcare

28

ARD LAW GROUP PLLC
PO Box 11633
Bainbridge Island, WA 98110
(206) 701-9243

professionals. Operating a medical school is a "health program," and educating doctors is a "health … activity." *See also* 45 C.F.R. 92.4 (defining "health program or activity" to include medical schools). The University of Washington School of Medicine receives federal financial assistance in the form of federal student financial aid and research grants.

72.    Private entities and individuals can sue to enforce Section 1557 and obtain both injunctive relief and damages. 42 U.S.C. §18116(a).

73.    Under §2000d-7(a)(1), a state is "not … immune … from suit in Federal court for a violation of … the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance."

74.    Defendants have caused and will continue to cause white students and physicians to be "excluded from participation in," "denied the benefits of," and "subjected to discrimination under" the BIPOC Physicians Directory program because of their race. §18116(a).

75.    Because Defendants violate Title VI and the Equal Protection Clause, they also violate Section 1557.

## PRAYER FOR RELIEF

Do No Harm asks this Court to enter judgment in its favor and against Defendants and to provide the following relief:

A.    A declaratory judgment that Defendants, through the BIPOC Physicians Directory for University of Washington School of Medicine BIPOC

Students, are violating the Equal Protection Clause of the Fourteenth Amendment, Title VI of the Civil Rights Act of 1964, and Section 1557 of the Affordable Care Act.

B.     A permanent injunction barring Defendants from operating a directory that excludes students or physicians based on race.

C.     Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws.

D.     All other relief that Do No Harm is entitled to.

Dated: October 15, 2024

Ard Law Group PLLC

By:    */s/ Joel B. Ard*
Joel B. Ard, WSBA # 40104
Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
206.701.9243
Joel@Ard.law
Attorneys For Plaintiff
Do No Harm

Respectfully submitted,

*/s/ Cameron T. Norris*
Thomas R. McCarthy*
Cameron T. Norris*
   *Lead Counsel*
Frank H. Chang*
C'Zar Bernstein*
Zachary Grouev*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
frank@consovoymccarthy.com
czar@consovoymccarthy.com
zach@consovoymccarthy.com

*pro hac vice applications forthcoming